**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**Douglas T. ORTON, Secretary, The Borden Company, Respondent.**

United States District Court
S. D. New York.

July 10, 1959.

Rehearing Denied July 30, 1959.

See 177 F.Supp. 241.

---

Albert G. Seidman, Atty. in Charge, N. Y. Office, Federal Trade Commission, Andrew C. Goodhope, F. P. Favarello, Washington, D. C., for petitioner Federal Trade Commission.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for respondent, John E. F. Wood, Charles E. Stewart, Jr., C. Lamar Barnes, New York City, of counsel.

DAWSON, District Judge.

This is a motion, pursuant to the provisions of § 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, for an order requiring respondent to appear before the petitioner's hearing examiner and produce certain documentary material referred to in a subpoena duces tecum served upon the respondent. The only issue relates to that portion of the subpoena duces tecum which would require respondent to produce

"All schedules submitted to the Bureau of the Census on Form MC 20C by all plants, manufacturing establishments or units owned or controlled by your concern in conjunction with the 1954 census of manufacturers together with copies of all correspondence clarifying or amending said schedules or reports."

It is to be noted that the subpoena duces tecum does not require the respondent to submit any work papers or other material used by the respondent in compiling the information submitted to the Bureau of the Census, or file copies thereof, but requires production of the actual schedules submitted to the Bureau, together with all correspondence clarifying or amending said schedules or reports.

Respondent contends that this subpoena duces tecum calls for confidential and privileged data and it cannot be compelled to produce the documents required.

It is to be noted that Form MC 20C has at the top of it the following statement:

"Confidential—This report should be returned within 30 days of its receipt. This report is required by Act of Congress (13 U.S.C. [§] 131). Your report is confidential and only sworn Census employees will have access to it. It cannot be used for purposes of taxation, investigation or regulation."

The subpoena duces tecum has been issued in connection with a proceeding now pending before the Federal Trade Commission in which the Federal Trade Commission alleges that The Borden Company and other companies have violated the provisions of the Federal Trade Commission Act and § 7 of the Clayton Act, 15 U.S.C.A. § 18. This subpoena was issued in connection with this in-

vestigation by the Federal Trade Commission by virtue of the regulatory authority of the Federal Trade Commission.

■ The Federal Trade Commission has broad powers to secure information or data from companies subject to its regulatory authority. See 15 U.S.C.A. § 49. It cannot, however, require that the respondent produce the schedules submitted by it for the 1954 Census of Manufactures.

The census was taken pursuant to the provisions of Title 13 U.S.C. § 131, providing for preparation by the Secretary of Commerce, in each fifth year, of a census of manufactures.

■ Section 9 of Title 13 U.S.C., provides that neither the Secretary of Commerce, nor any other officer or employee of the Department of Commerce or bureau or agency thereof, may use the information furnished under the provisions of this title for any purpose other than the statistical purposes for which it is supplied, or "make any publication whereby the data furnished by any particular establishment or individual under this title can be identified."

Where information is given under such a statute, the information so furnished is privileged. See 8 Wigmore, Evidence, § 2377 (3d ed. 1940):

"The policy underlying the principle of § 2374 ante, is that where the Government needs information for the conduct of its functions, and the persons possessing the information need the encouragement of privacy in order to be induced freely to make full disclosure, the protection of a privilege should be accorded.

"In that well-settled common-law application of this policy, the privilege concerned information relating to the conduct of third persons. But many situations exist where the information can best be obtained only from the person himself whose affairs are desired to be known by the Government. An attempt to do so by mere compulsion might be tedious and ineffective. And where the ultimate purpose to be served is *administrative*, and not penal, it may well be that the Government can afford to promise secrecy in respect to purposes penal or litigious, as the price of readily achieving its administrative purpose when it demands a report of the truth.

\* \* \* \* \* \*

"(3) The most·apt instance of this principle is the privilege, established in most jurisdictions, for *reports* of *commercial* and *industrial facts*, required by law to be made by employers of various sorts, or by commercial houses, or by public utilities, to the appropriate administrative official, as well as for reports of *accidents* in carriage by rail, by motor, or by aircraft. Here the main object is to investigate conditions and causes with·a view to future administrative action; hence the State can afford to abdicate the use of such reports for purposes of punishment or of private litigation, in case the facts reported reveal a legal liability or a commercial secret on the part of the person reporting." Vol. 8 Wigmore, Evidence § 2377 (3d ed. 1940).

One example of such reports cited by Wigmore is census data. Id. nn. 3 & 5.

That the information furnished to the Bureau of the Census in the Census of Manufactures was to be privileged and confidential was announced by the President of the United States on November 22, 1929, when he stated in a proclamation that

"The sole purpose of the census is to secure general statistical information regarding the population and resources of the country, and replies are required from individuals only to permit the compilation of such general statistics. No person can be harmed in any way by furnishing the information required. The census has nothing to do with

taxation, with military or jury service, with the compulsion of school attendance, with the regulation of immigration or with the enforcement of any national, state or local law or ordinance. There need be no fear that any disclosure will be made regarding any individual person or his affairs * * *." See 36 Op. Attys. Gen. 366 (1930).

In the present situation the petitioner seeks to invoke the processes of this Court to compel respondent to reveal data filed with the Government which the Government at the time stated would be confidential and not used for regulatory purposes, and which the President of the United States had indicated, in a proclamation, would never be used in connection with "the enforcement of any national, state or local law or ordinance." The information required by the Government in connection with the census had to be prepared in a particular manner and was not necessarily information which a business would furnish if it had an opportunity to check with its accounting records or its counsel.* The information was furnished for statistical purposes of the Government and was not furnished with any reservations which might have been placed upon it if it were known that the information would be used for regulatory purposes.

The petitioner is seeking the data not in order to get the facts which underlie the statistics, but rather to get the compiled statistical data in the particular manner in which it was prepared by the respondent when the information was given upon the assurance of the Government that it would always remain confidential and could not be used for purposes of "taxation, investigation or regulation."

Respondent contends that not alone is the information privileged but also that it is irrelevant. It is unnecessary for the Court to pass upon this contention. When one branch of the Government seeks to invoke the aid of the Court to compel the release of information which the Government itself has publicly announced will be confidential and not used for purposes of regulation, it is asking this Court to do something which offends its sense of justice. When the Government, the Congress and the President all stated that the information would be given on a confidential basis, and would never be released for the purposes of investigation or regulation, for another branch of this Government to come in and demand that this Court order the production of such information for the purposes of investigation, such action can only be characterized by the words which Mr. Justice Holmes so aptly used in referring to wire-tapping: "dirty business." Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944. The Court's assistance will not be given to any such attempt.

The petition is denied. So ordered.

---

* The Director of the Bureau of the Census, in refusing to comply with a demand for copies of Forms NC 20C containing information submitted by one of the parties involved in the present investigation, pointed out that the 1954 Census of Manufactures was designed to secure confidential census reports and that the sections of Title 13 U.S.C., dealing with the confidentiality of those reports were enacted to protect companies against any harm which might result from their complying with a census reporting requirement. He then pointed out that this privileged relationship enabled the Census Bureau to require response to inquiries which were necessarily formulated on a uniform basis for all companies in a particular activity regardless of whether or not their books of record directly yield the requested information. He further pointed out that the rules governing the reporting permit the companies to authorize subordinate officials to furnish information directly, before formal clearance with comptrollers, auditors or company counsel, and that this information frequently is furnished before final figures have been developed in the company record system